**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| AMY WILLEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | C.A. NO. C-06-262 |
| | § | |
| SOUTHERNCROSS AMBULANCE, INC., | § | |
| | § | |
| Defendant. | § | |

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On this day came on to be considered Defendant's "Motion for Summary Judgment" (D.E. 18). For the reasons discussed below, Defendant's motion is DENIED.

## I.   JURISDICTION

The Court has federal question jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

## II.   BACKGROUND

On June 26, 2006, Plaintiff Amy Willey ("Plaintiff") filed suit in this Court against Defendant SouthernCross Ambulance, Inc., ("Defendant" or "SouthernCross") alleging that Defendant retaliated against her for making complaints of sexually harassing conduct, in violation of 42 U.S.C. § 2000e-3(a). (Compl. ¶¶ 26-27.) Plaintiff also asserted an assault and battery claim against the Defendant. (Compl. at ¶¶ 28-29.) On March 15, 2007, Defendant filed a "Motion for Summary Judgment" against Plaintiff, arguing that no genuine issues of material fact exist as to Plaintiff's claims and that

Defendant is entitled to judgment as a matter of law.  (D.E. 18.)
In particular, Defendant argued that Plaintiff could not present
any competent summary judgment evidence that she was constructively
discharged from SouthernCross, that she suffered adverse employment
actions as a result of having complained of harassment, or that
Defendant was liable for assault.  (Mot. for Summ. Judg. at 1-2.)
On April 4, 2007, Plaintiff filed a Response in opposition to
Defendant's motion.  (D.E. 21.)  For the purposes of the Motion for
Summary Judgment, the following facts are not in dispute:

In 2004 and early 2005, Plaintiff was employed with Defendant
SouthernCross Ambulance as a 911 Paramedic.  (See Pl.'s Exhibit
("PEX") 1 at 46-47.)  In her time as a Paramedic, Plaintiff worked
at Defendant's two stations in Live Oak County, located in George
West and Lagarto.  (PEX 1 at 49-50.)  Plaintiff worked primarily
(about 90% of the time) out of the Lagarto station.  (PEX 1 at 50.)
Plaintiff's supervisors at her job were individuals named Tony
Rosales ("Rosales") and Kim Harrington.  (PEX 1 at 52.)  Dave
Newman ("Newman") was the Regional Director for "Region 2," which
encompassed Live Oak County, and was the next level of supervision
above Plaintiff's immediate supervisors.  (PEX 1 at 53; 4 at 92.)
Rick Anderson oversaw the operations of the company and reported to
the Defendant's owners, Craig and Debra LeBlanc.  (PEX 1 at 53.)

On or about November 30, 2004, Plaintiff was working at the
George West station along with Rosales and some other SouthernCross
employees.  (PEX 8.)  After Plaintiff emerged from the shower in

the station, Rosales made a comment to the group to the effect that women with wet hair were "sexy" and "turn[ed him] on." (See PEX 1 at 59; 3 at 15-16; 8.)  On or about December 10, 2004, Plaintiff made a complaint regarding this comment to Operations Supervisor Rick Anderson. (PEX 1 at 65; 8; 9.)  In her complaint, Plaintiff indicated that Rosales had made a similar comment in October as well. (PEX 8; see also PEX 1 at 59-60.)  The parties dispute exactly how Defendant SouthernCross responded to the Plaintiff's complaint of harassment, or what (if any) kind of investigation was conducted into the incident.

On or about January 3, 2005, Plaintiff and Rosales had an encounter which is the subject of some dispute between the parties. Plaintiff alleges that she was attempting to fax another complaint[1] on Rosales to SouthernCross management, when Rosales confronted her and asked if she was faxing more complaints about him. (See PEX 1 at 197-98; 14.)  Plaintiff alleges that Rosales then grabbed her arm and twisted it, saying that if she made any more complaints about him he would "beat her ass." (PEX 1 at 198; see also PEX 6

---

[1] This second complaint on Rosales was not in regards to his sexual comments, but involved a different incident.  In particular, Plaintiff and Rosales previously had a disagreement over what to put in a written report to the Regional Director, Dave Newman. (See PEX 1 at 84-85.)  According to Plaintiff, the disagreement culminated in Rosales saying that she could write whatever the "f---" she wanted in the report, because he would see to it that it would not matter anyway. (PEX 1 at 84-85.)  In response, Plaintiff drafted a document complaining of Rosales' use of the "f-word" and his "threat" that he would see to it that what she wrote would not matter. (PEX 1 at 84-85.)

at 35.)  Following this alleged incident, Plaintiff made an assault complaint to the George West Police Department.  (PEX 1 at 11; 13.) Plaintiff also called one of the owners of SouthernCross, Debra LeBlanc ("LeBlanc"), to make an internal report.  (PEX 1 at 80-82.)

Around January 10, 2005, Plaintiff again contacted LeBlanc, this time to inform her that Plaintiff did not feel comfortable returning to work due to the "hostile work environment" in Live Oak County.  (PEX 1 at 87; 16.)  Plaintiff indicated to LeBlanc that she looked forward to returning to work for Defendant once "this issue is resolved."  (PEX 16.)  Following this communication with LeBlanc, Plaintiff stopped coming into work.  (Def.'s Exhibit ("DEX") 1 at 170.)  On June 8, 2005, Defendant sent Plaintiff a letter that Rosales was no longer an employee with the Defendant and that she could contact Defendant for her shift designation and start time by June 24, 2005.  (DEX 10; PEX 3 at 76-78.)  Plaintiff did not respond to the Defendant's letter and, on July 8, 2005, Defendant wrote her again indicating that it viewed her failure to respond as a voluntary resignation.  (See DEX 11; PEX 3 at 81.)  In fact, Plaintiff had already obtained new employment by that time with a company called Angel Care.  (DEX 1 at 129.)

## III. DISCUSSION

### A.   Summary Judgment Standard

Federal Rule of Civil Procedure 56 states that summary judgment is appropriate if the "pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are "material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Judwin Props., Inc. v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for [his] motion, and identifying those portions of [the record] which [he] believes demonstrate the absence of a genuine issue of material fact." See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has carried his burden, the nonmovant "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." First Nat'l Bank of Arizona v. Cities Service Co., 391 U.S. 253, 270 (1968); see also Schaefer v. Gulf Coast Reg'l Blood Ctr., 10 F.3d 327, 330 (5th Cir. 1994) (stating that the nonmoving party must "produce affirmative and specific facts" demonstrating a genuine issue). The nonmovant's burden is not satisfied by conclusory allegations, unsubstantiated assertions, or some metaphysical doubt as to the material facts.

-5-

Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995); see also Brown v. Houston, 337 F.3d 539, 541 (5th Cir. 2003) (stating that "improbable inferences and unsupported speculation are not sufficient to [avoid] summary judgment"). Similarly, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for [that party]." Doe on Behalf of Doe v. Dallas Indep. Sch. Dist., 153 F.3d 211, 215 (5th Cir. 1998).

When the parties have submitted evidence of conflicting facts, however, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Willis, 61 F.3d at 315. Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the nonmoving party, no reasonable jury could return a verdict for that party. See, e.g., Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000). "That the movant appears more likely to prevail at trial is no reason to grant summary judgment; it is not the province of the court on a motion for summary judgment to weigh the evidence, assess its probative value, or decide factual issues." Byrd v. Roadway Exp., Inc., 687 F.2d 85, 87 (5th Cir. 1982); Aubrey v. Sch. Bd. of Lafayette, 92 F.3d 316, 318 (5th Cir. 1996).

## B.   Title VII Retaliation

Title VII, in addition to prohibiting employers from

-6-

discriminating on the basis of certain characteristics such as race
and sex, also provides that:

> It shall be an unlawful employment practice for an
> employer to discriminate against . . . [an] employee[]
> . . . because [the employee] has opposed any practice
> made an unlawful employment practice by this subchapter,
> or because he has made a charge, testified, assisted, or
> participated in any manner in an investigation,
> proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).  Claims of retaliation in violation of §
2000e-3(a) are usually analyzed under the burden-shifting framework
established in the Supreme Court case of McDonnell Douglas Corp. v.
Green, 411 U.S. 792 (1973).[2]  See, e.g., Rios v. Rossotti, 252 F.3d
375, 380 (5th Cir. 2001) (stating that the "framework for analyzing
a retaliation claim is the same as that used in the employment
discrimination context"); see also Long v. Eastfield College, 88
F.3d 300, 304 (5th Cir. 1996).  Under this framework, the burden
lies initially with the plaintiff "to raise a genuine issue of
material fact on each element of his prima facie case." Johnson v.

---

[2] Notably, however, "in the unusual instance where a
plaintiff is able to support the elements of her claim with
direct evidence of a retaliatory motive, the McDonnell Douglas
framework does not apply." Fabela v. Socorro Independent School
Dist., 329 F.3d 409, 415 (5th Cir. 2003); Trans World Airlines,
Inc. v. Thurston, 469 U.S. 111, 121 (1984) (stating, "the
McDonnell Douglas test is inapplicable where the plaintiff
presents direct evidence of discrimination"); Fierros v. Texas
Dept. of Health, 274 F.3d 187, 192 (5th Cir. 2001).  "Instead, in
such 'direct evidence' cases, once the plaintiff has submitted
evidence that retaliation was among the motives which prompted
the adverse action, the burden of proof shifts to the employer to
establish by preponderance of evidence that the same decision
would have been made regardless of the forbidden factor."
Fabela, 329 F.3d at 415 (quoting Brown v. E. Miss. Elec. Power
Ass'n, 989 F.2d 858, 861 (5th Cir. 1993)).

_Louisiana_, 351 F.3d 616, 621 (5th Cir. 2003) (citing _Medina v. Ramsey Steel Co., Inc._, 238 F.3d 674, 680 (5th Cir. 2001)). "[O]nce the plaintiff establishes a prima facie case of unlawful retaliation, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason" for the retaliatory conduct. _See_, _e.g._, _Rios_, 252 F.3d at 380; _Long_, 88 F.3d at 304.  If the Defendant articulates a legitimate, non-discriminatory reason for its actions, "the plaintiff must then adduce sufficient evidence that would permit a reasonable trier of fact to find that the proffered reason is a pretext for retaliation." _See_, _e.g._, _Rios_, 252 F.3d at 380; _Long_, 88 F.3d at 304.

### 1.  Prima Facie Case

In order to demonstrate a prima facie case of retaliation, the Plaintiff must prove three elements: "(1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action." _Long_, 88 F.3d at 304 (citing _McMillan v. Rust College, Inc._, 710 F.2d 1112, 1116 (5th Cir. 1983)); _see also_ _Lemaire v. Louisiana Dept. of Transp. & Development_, 480 F.3d 383, 388 (5th Cir. 2007); _Havrill v. Westward Communications, LLC_, 433 F.3d 428, 439 (5th Cir. 2005).

### a.  Protected Activity

Under the first prong of the prima facie test, "[a]n employee has engaged in activity protected by Title VII if she has either

-8-

(1) opposed any practice made an unlawful employment practice by Title VII or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII." Long, 88 F.3d at 304 (citing 42 U.S.C. § 2000e-3(a)). "The opposition clause of § 2000e-3(a) requires the employee to demonstrate that she had at least a reasonable belief that the practices she opposed were unlawful." Id. (citing Payne v. McLemore's Wholesale & Retail Stores, 654 F.2d 1130, 1140 (5th Cir. 1981)); see also Byers v. Dallas Morning News, Inc., 209 F.3d 419, 428 (5th Cir. 2000).

In this case, it is undisputed that Plaintiff made a complaint to SouthernCross management regarding Rosales' two sexual comments toward her at the workplace. (See PEX 8; 9; see also PEX 1 at 65.) Plaintiff could reasonably believe that Rosales' sexual comments constituted harassment prohibited under Title VII, especially in light of Plaintiff's evidence that Rosales engaged in other harassing conduct such as (1) calling Plaintiff on the telephone with great frequency, and (2) telling other employees he "want[ed] to have sex" with Plaintiff. (PEX 6 at 32; 2 at ¶ 3.) Therefore, Plaintiff's complaint to management of the allegedly harassing statements constitutes a protected activity.[3]  See Lemaire, 480

---

[3] To the extent that Rosales' alleged assault of Plaintiff constituted retaliation against her for making the harassment complaint, Plaintiff's complaint to management about the assault also could constitute protected activity under Title VII.  See 42 U.S.C. § 2000e-3(a) (retaliation is an unlawful employment practice under Title VII).

F.3d at 390 (stating that the plaintiff's report to his supervisor regarding sexual comments made by another supervisor constituted a protected activity); Green v. Adm'rs of Tulane Educ. Fund, 284 F.3d 642, 657 (5th Cir. 2002) (an employee's complaint of harassment to the head of the personnel department was a protected activity under Title VII); Long, 88 F.3d at 305 (employees engaged in protected activity by making frequent complaints to university officials). Therefore, Plaintiff has presented evidence to satisfy her burden on this first element of the prima facie retaliation test.

### b.    Adverse Action

With respect to the second element of the prima facie test, the Supreme Court has recently held that "the anti-retaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace." Burlington Northern & Santa Fe Ry. Co. v. White, — U.S. —, 126 S.Ct. 2405, 2409 (2006). Rather, the anti-retaliation provision forbids those employer actions which are "materially adverse, which in this context means [the action] well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 2414-2415. The requirement of "material adversity" means that "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." Id. at 2415. If, however, the

employer's actions are "likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers," then Title VII's retaliation provision is implicated.  Id.[4]

Where a plaintiff claims that she suffered an adverse employment action by being constructively discharged, she "must prove that working conditions would have been so difficult or unpleasant that a reasonable person in [her] shoes would have felt compelled to resign."  Harvill v. Westward Communications, L.L.C., 433 F.3d 428, 439 (5th Cir. 2005) (citing Landgraf v. USI Film Products, 968 F.2d 427, 429-30 (5th Cir. 1992)).  In determining whether a reasonable employee would feel compelled to resign, the court may consider factors such as:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status

Brown v. Kinney Shoe Corp., 237 F.3d 556, 566 (5th Cir. 2001); see also Harvill, 433 F.3d at 439-40; Brown v. Bunge Corp., 207 F.3d 776, 782 (5th Cir. 2000).  The factors are not exclusive and the

---

[4] In Burlington Northern, the Supreme Court rejected the approach taken by several circuits, including the Fifth Circuit, that required plaintiffs to demonstrate an "ultimate employment decision," such as hiring, granting leave, discharging, promoting, and compensating, in order to satisfy the adverse employment action element of a retaliation claim.  Burlington Northern, 126 S.Ct. at 2410; see also Grice v. FMC Technologies, Inc., No. 06-20509, 2007 WL 329265 at *5 (5th Cir. Jan. 30, 2007) (unpublished).

court may consider other facts relevant to whether a reasonable employee would feel compelled to resign. See Barrow v. New Orleans S.S. Ass'n, 10 F.3d 292, 297 (5th Cir. 1994) (stating that the list of seven constructive discharge factors is not exclusive). A constructive discharge claim requires a greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment. Benningfield v. City of Houston, 157 F.3d 369, 378 (5th Cir. 1998). It is necessary to examine the conditions imposed, not the employer's state of mind, and an employee does not need to prove that an employer subjectively intended to force the employee to resign. Bourque v. Powell Elec. Mfg. Co., 617 F.2d 61, 65 (5th Cir. 1980).

In this case, Plaintiff has evidence that she suffered adverse employment actions following her complaints to management.[5] For example, Plaintiff testified that Defendant reduced or cut her work hours after she made the harassment complaint. (PEX 1 at 71, 73.) Plaintiff also testified that, following her complaint regarding Rosales' conduct, Defendant reassigned Rosales to the station where Plaintiff worked, where they would have to frequently interact:

> On my time sheets it shows that I was assigned to the "LO" or Lagarto station. Tony Rosales's time sheets show that before my sexual harassment complaint on December

---

[5] Defendant contends that most of the allegedly retaliatory actions claimed by the Plaintiff never actually occurred. This is a factual issue, however. For the purposes of summary judgment, the Court must believe the evidence of the Plaintiff, the nonmovant, and draw all justifiable inferences are drawn in her favor. Willis, 61 F.3d at 315.

12, 2004, Tony was assigned to the "GW" or George West
station.   All the days after my complaint, his time
sheets show that he was assigned to the "LO" or Lagarto
station with me.

(PEX 2 at ¶ 4.)  According to Plaintiff, Rosales' reassignment came
even after Plaintiff had specifically requested that she not work
in the same building as Rosales.  (PEX 1 at 95-96.)  Plaintiff also
has some evidence suggesting that SouthernCross manager Dave Newman
acted with indifference, or even hostility, towards her complaint
by telling her (in front of Rosales) that "he was tired of hearing
[her] complaints," that he "did not want to hear any more
complaints against Rosales anymore," and "that he didn't care if
that intimidated her."  (See, e.g., PEX 1 at 71, 73; 2 at ¶ 7.)

Moreover, Plaintiff argues that the conduct of her supervisor,
Rosales, also made her working conditions difficult.  In addition
to the sexual comments of which she complained to management,
Plaintiff has evidence demonstrating that Rosales told at least one
of Plaintiff's co-workers "several times" that Rosales "want[ed] to
have sex with her" and "bet she was a good [f---]."  (PEX 6 at 32.)
Plaintiff learned of these sexual comments from her coworker.  (See
PEX 6 at 32-33.)   Plaintiff also testified that Rosales made
unnecessarily frequent phone calls to Plaintiff:

Tony would call 5-6 times per shift, and at times when I
was at home, and specifically ask to speak to me even
though it might be something intended for both my partner
and me.  Furthermore, he would call me about matters that
didn't involve me and that didn't require my input . . .
It was my understanding that none of the other EMT's ever
received calls like this from him.

-13-

(PEX 2 at ¶ 3.)   More importantly, however, there is evidence showing that Rosales attempted to deter Plaintiff from filing more complaints against him of any kind.   In particular, Plaintiff testified that, less than a month after her initial harassment complaint, Rosales grabbed Plaintiff's arm, twisted it, made a fist, and threatened to "beat her ass" if she made any more complaints about him.   (See, e.g., PEX 1 at 198; 6 at 35; 14.)

Finally, Plaintiff's evidence (although disputed) shows that after she complained of Rosales' alleged threat and assault, Regional Director Dave Newman threatened and took action against Plaintiff and her corroborating witness, Clay Martin, for making the complaint.   In particular, Plaintiff's evidence shows that Newman met with Martin and told him that he would be fired unless he recanted his witness statement in support of Plaintiff's assault allegation.   Specifically, Martin testified at his deposition:

> **A.**   Right. [Newman] asked me to -- just told me change it and even told me an idea[] how to change it, just an idea.  He told me to change it and to say that instead of what really occurred that [Plaintiff] had provoked [Rosales] to take physical action against her.
>
> **Q.**   That's what he told you to do?
>
> **A.**   Yes sir.  And I told him there's no way.  It's illegal and it was a lie.  And he said, well -- you know, he went on to tell me that he was going to get rid of me, going to fire me unless I did.

(PEX 6 at 56.)  Martin testified that, when he refused to change his story, Newman fired him.  (PEX 6 at 56.)  Furthermore, Martin and Plaintiff both testified that, during Martin's encounter with

-14-

Newman, Plaintiff called Martin's phone and heard Newman say something to the effect of: "Is that Amy?  I'm tired of that sorry little bitch, and when she returns to work, I'm going to fire her." (PEX 1 at 89; see also 6 at 73-74.)

Viewing this evidence in the light most favorable to the Plaintiff, a jury could find that the various acts of Defendant (through its managers and supervisors) were sufficient to dissuade a reasonable worker from engaging in protected activity under Title VII.  Furthermore, if a jury believed Plaintiff's evidence it could also find that Plaintiff's work conditions (in particular: the decrease in work hours, hostility towards her complaint, assault, termination of her corroborating witness, threats to terminate her, etc.) were together such that a reasonable person in Plaintiff's position would feel compelled to resign.  Therefore, Plaintiff has met her burden of proving an adverse employment action.

### c.  Causal Link

With respect to the third and final element of the prima facie test, a "plaintiff alleging Title VII retaliation may establish her case for causation in one of two ways: she may either present direct evidence of retaliation . . . or she may provide circumstantial evidence creating a rebuttable presumption of retaliation." Fabela v. Socorro Independent School Dist., 329 F.3d 409, 415 (5th Cir. 2003) (citing Fierros v. Texas Department of Health, 274 F.3d 187, 192 (5th Cir. 2001); see also Thomas v. Atmos

-15-

Energy Corp., No. 06-30514, 2007 WL 866709 at *7 (5th Cir. March 21, 2007) (unpublished). "In a Title VII context, direct evidence includes any statement or document which shows on its face that an improper criterion served as a basis--not necessarily the sole basis, but a basis--for the adverse employment action." Fabela, 329 F.3d at 415.

In this case, Plaintiff has presented both direct and circumstantial evidence of a "causal link" between the protected activity and the adverse employment action. For direct evidence, Plaintiff testified that Newman expressly stated, in denying her request for sleeping quarters away from Rosales, that "he was tired of hearing [her] complaints," that he "did not want to hear any more complaints against Rosales anymore," and "that he didn't care if that intimidated her." (See, e.g., PEX 1 at 71, 73; 2 at ¶ 7.) Furthermore, Plaintiff's evidence shows that Rosales expressly threatened to harm Plaintiff *if she filed more complaints about him.* (PEX 1 at 198; 6 at 35; 14.) If believed, these statements show on their face that a retaliatory motive served as a basis for at least some of the allegedly adverse employment actions. Fabela, 329 F.3d at 415.

Second, in addition to the direct evidence, Plaintiff also has circumstantial evidence of close temporal proximity between her complaint about Rosales and the allegedly retaliatory conduct. The Fifth Circuit has held that "[t]he closeness in time between the

-16-

protected activity and the adverse employment action could create a genuine issue of fact as to whether there was a causal connection." Jones v. Robinson Prop. Group, L.P., 427 F.3d 987, 995 (5th Cir. 2005) (citing Swanson v. Gen. Servs. Admin., 110 F.3d 1180, 1188 (5th Cir. 1997) ("[c]lose timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation")); see also Lemaire v. Louisiana Dept. of Transp. and Development, 480 F.3d 383, 390 (5th Cir. 2007) ("Further, the timing of the suspension--approximately two weeks after LeMaire's report of harassment--suggests a causal connection").   In this case, Plaintiff made her complaint regarding Rosales on or about December 10, 2004.   (PEX 1 at 65; 8; 9.)   The alleged retaliatory conduct all occurred in under one month from that time.   Given this close temporal proximity, combined with the direct evidence, a jury could infer that the existence of a causal link between Plaintiff's complaint and the allegedly retaliatory conduct.   Therefore, Plaintiff has met her burden of establishing a prima facie case of retaliation.

## 2.  Burden Shifting

Normally, when Plaintiff establishes a prima facie case of retaliation on a motion for summary judgment, the Court engages in a burden-shifting analysis in which the burden initially shifts to the Defendant "articulate a legitimate, nondiscriminatory reason"

for the retaliatory conduct.  <u>See</u>, <u>e.g.</u>, <u>Rios</u>, 252 F.3d at 380;
<u>Long</u>, 88 F.3d at 304.  If the Defendant articulates a legitimate,
non-discriminatory reason for its actions, "the plaintiff must then
adduce sufficient evidence that would permit a reasonable trier of
fact to find that the proffered reason is a pretext for
retaliation."  <u>Rios</u>, 252 F.3d at 380.

In this case, however, Defendant does not urge or present any
evidence that it had a legitimate, non-discriminatory reason for
the retaliatory conduct alleged by Plaintiff.  Therefore, the Court
need not conduct the burden-shifting analysis.  Even if Defendant
had presented such evidence, however, burden-shifting would not be
appropriate because Plaintiff has presented some direct evidence of
Defendant's retaliatory motive.  <u>See</u>, <u>e.g.</u>, <u>Fabela</u>, 329 F.3d at 415
(noting that the <u>McDonnell Douglas</u> framework does not apply" where
plaintiff presents direct evidence of retaliatory motive);
<u>Thurston</u>, 469 U.S. at 121 (same).  Accordingly, Defendant's motion
for summary judgment on Plaintiff's Title VII retaliation claim
must be DENIED.

**C.   Assault**

Plaintiff claims that Defendant SouthernCross is liable for
Rosales allegedly assaulting her on January 3, 2005.  Generally, a
person commits an assault and battery under Texas law if he
"intentionally or knowingly causes physical contact with another
when the person knows or should reasonably believe that the other

-18-

will regard the contact as offensive or provocative." <u>Foye v. Montes</u>, 9 S.W.3d 436, 441 (Tex. App.--Houston 1999); <u>see</u> <u>also</u> Texas Pattern Jury Charges 6.6.  In this case, Plaintiff has evidence that an assault and battery occurred when Rosales grabbed her arm, twisted it, and threatened to beat her.  (<u>See</u>, <u>e.g.</u>, PEX 1 at 198; PEX 6 at 35.)  The question, therefore, is whether Defendant can be held liable for the actions of its employee.  Plaintiff contends that Defendant is liable for two independent reasons: (1) Defendant is liable under the theory of respondeat superior; or (2) Defendant is liable because it ratified the assault.

### 1.   Respondeat Superior

Under the doctrine of respondeat superior, an employer may be held "vicariously liable for the torts of its servants committed in the course and scope of their employment." <u>GTE Southwest, Inc. v. Bruce</u>, 998 S.W.2d 605, 617 (Tex. 1999).  "Under Texas law, an employee's conduct is considered to fall within the scope of his employment if his actions were (1) within the general authority given him; (2) in furtherance of the employer's business; and (3) for the accomplishment of the object for which the employee was employed." <u>Bodin v. Vagshenian</u>, 462 F.3d 481, 484 (5th Cir. 2006); <u>see also</u> <u>Wrenn v. G.A.T.X. Logistics, Inc.</u>, 73 S.W.3d 489, 493 -494 (Tex. App.--Fort Worth 2002) (citing <u>Soto v. El Paso Natural Gas Co.</u>, 942 S.W.2d 671, 681 (Tex. App.--El Paso 1997)).  "As a general rule in Texas, an employer cannot be vicariously liable for the

intentional torts of assault or battery perpetrated by its employee because such acts are not ordinarily within the course and scope of an employee's authority or employment." Wrenn, 73 S.W.3d at 494; Kelly v. Stone, 898 S.W.2d 924, 927 (Tex. App.--Eastland 1995). This is because "[i]t is not ordinarily within the scope of an employee's authority to commit an assault on a third person." Kelly, 898 S.W.2d at 927 (citing Texas & P. Ry. Co. v. Hagenloh, 247 S.W.2d 236, 237 (Tex. 1952)); Bodin, 462 F.3d at 484 (same). "Assault is usually the expression of personal animosity and is not for the purpose of carrying out the employer's business." Kelly, 898 S.W.2d at 927; Wrenn, 73 S.W.3d at 494. "The plaintiff bears the burden of proving that the employee acted for reasons other than personal animus" and that the assault was in fact in furtherance of the employer's business. See, e.g., Bodin, 462 F.3d at 485 (citing Garrett v. Great W. Distrib. Co. of Amarillo, 129 S.W.3d 797, 800 (Tex. App.--Amarillo 2004)).

In this case, Plaintiff has failed to present evidence demonstrating that Defendant is liable for Rosales' alleged assault under the doctrine of respondeat superior. Plaintiff contends that Defendant "admits" that Rosales acted within the course and scope of his employment, citing to the deposition of Joyce Whinery to support this claim. (Pl.'s Response at 12.) This contention is without merit. In her deposition, Joyce Whinery states only that Defendant paid for an attorney to defend Rosales from the criminal charges of assault because it believed that the allegations against

-20-

him were baseless, and the alleged assault occurred while Rosales was on the job.  (PEX 3 at 59-61.)  This is not an admission by the Defendant that Rosales acted within the course and scope of his employment.  Plaintiff has failed to presented any evidence that the alleged assault was in furtherance of Defendant's business or that the assault was for the accomplishment of the object for which Rosales was employed.[6]  Therefore, Defendant may not be held liable on a respondeat superior theory.

## 2.   Ratification

Even if Rosales did not act in the course and scope of his employment, Defendant may nonetheless be held liable under a theory of ratification.  Ratification occurs when "the employer or its vice-principal confirms, adopts, or fails to repudiate the acts of its employee."[7]  Prunty v. Arkansas Freightways, Inc., 16 F.3d 649,

---

[6] Plaintiff also argues that the fact that Defendant's insurance carrier is paying for the costs of this civil suit demonstrates that Rosales acted in the course and scope of his employment.  (Pl.'s Response at 12-13.)  Plaintiff reasons that the insurance policy covers the actions of Defendant's employees only to the extent that the employees act in the course and scope of their employment.  (Pl.'s Response at 13; PEX 19 at 2.)  This argument is unpersuasive, however, because the act of extending or denying coverage under an insurance policy is a business decision of the insurance company and in no way establishes the liability of the Defendant under the doctrine of respondeat superior.

[7] Under Texas law, an employer may ratify even the *intentional* torts of its employees, regardless of whether those intentional acts are outside the course and scope of the employment.  In Prunty v. Arkansas Freightways, Inc., 16 F.3d 649 (5th Cir. 1994), the Fifth Circuit rejected a district court's legal conclusion that "an employer can be held liable for the intentional torts of its employee only when the employee acts

-21-

653 (5th Cir. 1994).  Generally, ratification "means the adoption, confirmation or failure to repudiate prior unlawful acts which were not legally binding at a time when the [defendant] had the right and knowledge of facts necessary to repudiate such conduct; but which, by ratification or by the failure to repudiate, become the acts of the defendant."  Id. (citing Hinote v. Oil, Chemical and Atomic Workers International Union, AFL-CIO, Local 4-23, 777 S.W.2d 134, 141 (Tex. App.--San Antonio 1989).  "The employer may ratify its employee's conduct through its own acts, conduct, or affirmative acquiescence."  Skidmore v. Precision Printing and Pkg., Inc., 188 F.3d 606, 615 (5th Cir. 1999).  The Fifth Circuit has held that "[i]n regard to ratification, of course, it is evident that before one can ratify an act so that it becomes his own, he must know of the act with which he is charged." Prunty, 16 F.3d at 654; see also Paramount Nat. Life Ins. Co. v. Williams, 772 S.W.2d 255, 267 (Tex. App.--Houston 1989) (stating that the

---

within the course and scope of his employment and when the act furthers the object for which the employee was hired." Id. at 652.  The Fifth Circuit reversed the district court and held:

> A review of Texas law reveals quite readily that the district court erred in its legal conclusion. The law has been well-settled in Texas for well over a century that if an employer or a manager for an employer ratifies or approves the intentional, malicious, or grossly negligent acts of an agent, the employer may be liable . . . .

Id. at 652-53.  Furthermore, the Fifth Circuit held that the fact that an employee did not act within the course and scope of his employment does not control the question of whether the employer ratified the conduct.  Id. at 652 & n.12.  Therefore, Plaintiff may appropriately urge a ratification theory in this case.

"critical factor in determining whether a principal has ratified an unauthorized act by his agent is the principal's knowledge of the transaction and his actions in light of such knowledge"). "The plaintiff bears the burden of proving ratification." Skidmore, 188 F.3d at 615.

In this case, Plaintiff has presented evidence from which a jury could find that Defendant ratified Rosales' alleged assault. In particular, Plaintiff's evidence shows that she complained about the incident to SouthernCross management, orally and in writing. (See PEX 1 at 80-82; see also PEX 14.)  Furthermore, Plaintiff's evidence shows that Plaintiff's co-worker, Clay Martin, witnessed the assault and corroborated Plaintiff's version of events to the police.[8]  (See, e.g., PEX 6 at 35; 13 at 3.)  Despite her complaint coupled with Martin's corroboration, Plaintiff alleges that Defendant failed to conduct a meaningful investigation into her allegation and did not interview Plaintiff, Martin, or another employee, Frank Rodriguez, about the incident, (PEX 3 at 64-65), despite opportunities to do so.  (PEX 7; 22 at 39-41.)

Instead, Plaintiff's evidence shows that Defendant threatened and retaliated against Plaintiff and Martin for making the assault allegation against Rosales.  As mentioned above, there is evidence demonstrating that Newman told Martin that he would be fired unless he recanted his corroboration of Rosales' assault and that Newman

_____

[8] There is evidence showing that Defendant had notice of Plaintiff's police report and its contents.  (See PEX 3 at 64.)

-23-

did, in fact, fire Martin when he refused to change his story. (PEX 6 at 56.)  According to Martin, Newman also stated during this conversation that Plaintiff was "a sorry little bitch" and that he was going to "get rid of her too."  (PEX 6 at 73-74.)  Finally, Defendant paid for an attorney for Rosales to defend the criminal assault charges against him.  (PEX 3 at 59-61.)  Viewing this evidence in the light most favorable to the Plaintiff, a jury could find that the Defendant knew that Rosales committed an assault, and essentially confirmed or adopted Rosales conduct by paying for his defense, ignoring the complaint about him, and threatening those who accused him.  Accordingly, there is an issue of fact with respect to Defendant's liability for Plaintiff's assault claim, and Defendant's motion for summary judgment must be DENIED.

**IV.   CONCLUSION**

For the reasons stated above, Defendant's Motion for Summary Judgment (D.E. 18) is DENIED.

SIGNED and ENTERED this 18th day of May, 2007.

_____
Janis Graham Jack
United States District Judge

-24-